UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT FRANCIS ICEBERG,

Plaintiff,

v.

ANN MARTIN, et al.,

Defendants.

CASE NO. C15-1232JLR

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS AND DENYING LEAVE
TO AMEND

## I.    INTRODUCTION

Before the court are the following motions:  (1) Defendants Kevin W. Quigley, Pat Lashway, Andrew Aquirre, Ann Martin, and Tracy Wilson's (collectively, Defendants") motion to dismiss Plaintiff Scott Francis Iceberg's third amended complaint (MTD (Dkt. # 36)), (2) Defendants' motion for a protective order concerning certain discovery requests from Mr. Iceberg (MPO (Dkt. # 43)), (3) Defendants' motion for an extension of certain case schedule deadlines (MFE (Dkt. # 54), and (4) Mr. Iceberg's motion for leave to amend his third amended complaint (MFL (Dkt. # 42)).  The court has considered the

1  motions, the memoranda of the parties filed in support of and opposition to the motions,

2  the relevant portions of the record, and the applicable law.  Being fully advised,[1] the

3  court GRANTS Defendants' motion to dismiss, DENIES Mr. Iceberg's motion to amend

4  his third amended complaint, and DISMISSES Mr. Iceberg's federal claims with

5  prejudice and without leave to amend.  The court further declines to exercise

6  supplemental jurisdiction over Mr. Iceberg's state law claims and DISMISSES those

7  claims without prejudice.  The court further DENIES Defendants' motions for a

8  protective order and an extension of certain case schedule deadlines as moot.

## II.    BACKGROUND

10      In total, Mr. Iceberg has submitted five complaints in this action.  He initiated this

11  action with his original complaint (*see* Compl.), filed three subsequent amended

12  complaints (*see*  FAC (Dkt. # 7); SAC (Dkt. # 27); TAC (Dkt. # 34)), and proposes filing

13  a fourth amended complaint (*see* Prop. 4th Am. Compl. (Dkt. # 42-1)).  As the court

14  discusses the history of these filings, it primarily describes how each successive

15  complaint changed from the prior complaint, rather than describes each complaint

16  separately and in total.

17      Mr. Iceberg, who is proceeding *pro se* and *in forma pauperis* (*see* IFP Order (Dkt.

18  # 2)), filed his initial complaint on August 7, 2015 (*see* Compl.).  In his initial complaint,

19  //

20  //

21

22      [1] No party has requested oral argument on any motion, and the court deems oral argument to be unnecessary.  *See* Local Rule W.D. Wash. LCR 7(b)(4).

1    Mr. Iceberg sued the "State of Washington DSHS/DVR,"[2] as well as Ann Martin and

2    Tracy Wilson, who are both employees of DVR.  (*Id.* at 1-2; *see* Mot. for More Def.

3    Stmt. at 2 ("Mr. Iceberg alleges that DVR and several of its employees have violated his

4    rights . . . , naming each Defendant in their official capacities and two defendants, Ann

5    Martin and Tracy Wilson, in their personal capacities as well.").)  In his initial complaint,

6    Mr. Iceberg alleged that (1) he is disabled, (2) he is qualified to receive services from

7    Defendants, (3) he "repeatedly requested" an accommodation from Defendants that they

8    allow him to communicate with them primarily through email, and (4) Defendants

9    refused to accommodate him.  (Compl. at 2.)  He alleges that Defendants took "adverse

10   actions" against him by denying access to services that he is qualified to receive.  (*Id.* at

11   3.)  He alleged that Defendants' actions violated the Rehabilitation Act, and he also

12   asserts a claim under state law for intentional infliction of emotional distress.  (*Id.*)  He

13   sought $200,000.00 in damages.  (*Id.* at 4.)

14        On August 25, 2015, Mr. Iceberg filed his first amended complaint.  (*See* FAC.)

15   In his first amended complaint, Mr. Iceberg dropped the "State of Washington

16   DSHS/DVR" as a defendant, but added Mr. Quigley, "in his official capacity as Secretary

17   of the Washington State Department of Social and Health Services" and Mr. Aguirre, "in

18   his official capacity as Director of the Division of Vocation [sic] Rehabilitation."  (*Id.* at

19   1.)  He also clarified that he was suing Ms. Martin and Ms. Wilson in both their

20   individual and official capacities.  (*Id.*)

21        [2] The acronym "DSHS/DVR" apparently refers to the Division of Vocational
     Rehabilitation ("DVR"), which is an agency within the Department of Social and Health
22   Services ("DSHS").  (*See* Mot. for More Def. Stmt. (Dkt. # 17) at 1.)

1         In his first amended complaint, Mr. Iceberg alleged that he "is a qualified disabled

2   individual under the [Americans with Disabilities Act ("ADA")] and Rehabilitation

3   Act."[3]  (*Id.* at 2.)  He alleged that he is "qualified . . . to receive services from

4   Defendants," "repeatedly requested a reasonable accommodation," and was "ignored" by

5   Defendants.  (*Id.* at 3.)  He alleged that Defendants took adverse actions against him by

6   telling him that he "is too insane and delusional to attend school," telling him that "he

7   isn't qualified for services because he causes too much trouble," calling him

8   "adversarial," "[e]nding meetings abruptly," telling him that "he could easily be locked

9   up," telling him that "he isn't really disabled," and ultimately closing his case and

10   denying him services.  (*Id.*)

11         Mr. Iceberg also asserted claims for "failure to accommodate," "retaliation," and

12   "disparate impact" under both the Rehabilitation Act and Title II of the ADA and for

13   "disability" and religious discrimination under 18 U.S.C. § 1983.  (*Id.* at 3-6.)  He further

14   asserted a claim under the Religious Freedom Restoration Act, alleging that Defendants'

15   requirement that he submit to a "Psychology/Psychiatric evaluation" was incompatible

16   with his sincerely held religious beliefs as a Christian Scientist.  (*Id.* at 5.)  In this regard,

17   Mr. Iceberg alleged that Ms. Wilson laughed at him and told him "Christian Science is

18   not a real religion."  (*Id.* at 6.)  Finally, he increased his damages demand to $300,000.00.

19   (*Id.* at 7.)

20

21         [3] Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and
Section 504 of the Rehabilitation Act, 42 U.S.C. § 12132, both prohibit discrimination on the
basis of disability.  The ADA applies only to public entities, whereas the Rehabilitation Act

22   proscribes discrimination in all federally-funded programs.  *See Lovell v. Chandler*, 303 F.3d
1039, 1052 (9th Cir. 2002).

ORDER - 4

1    On December 8, 2015, Defendants filed a motion for a more definite statement.

2    (*See* Mot. for More Def. Stmt.)  On December 24, 2015, Mr. Iceberg filed a motion to

3    amend his first amended complaint "to respond to the alleged deficiencies described in

4    Defendants' [m]otion . . . , as well as to make other needed amendments." (MTA FAC

5    (Dkt. # 21) at 1.)  Defendants did not respond to Mr. Iceberg's motion.  (*See generally*

6    Dkt.)  On March 31, 2016, the court granted Mr. Iceberg's motion and denied

7    Defendants' motion as moot.  (3/31/16 Order (Dkt. # 26) at 4.)  The court, however,

8    stated that its ruling was "without prejudice to Defendants' re-filing a Rule 12 motion for

9    a more definite statement or to dismiss if warranted with respect to Mr. Iceberg's second

10    amended complaint."  (*Id.* at 4-5.)

11    Mr. Iceberg filed his second amended complaint on April 6, 2016.  (SAC (Dkt.

12    # 27.)  Mr. Iceberg added some factual detail by including some dates in his second

13    amended complaint.  (*See id.* at 3.)  He alleged that from approximately October 2014, to

14    July 2015, he received services from Defendants and made numerous requests that

15    Defendants grant him the accommodation of communicating with them "primarily via

16    email." (*Id.*)  He also specified that he made his accommodation requests to Ms. Wilson

17    and Ms. Martin, and they ignored his requests and "refused to engage in an interactive

18    process . . . in order to find an accommodation that would allow [him] to fully enjoy the

19    services offered by DVR." (*Id.*)  He specified that Ms. Wilson made the particular

20    adverse statements that he alleged in his first amended complaint and that Ms. Wilson

21    had closed his file.  (*Id.* at 4, 6-7.)  He made no specific allegations against Mr. Aguirre

22    and Mr. Quigley, however, except to identify them as officials with DVR and to allege

1    that their actions were "indifferent." (*Id.* at 2, 7.)  Much of the content that Mr. Iceberg

2    added to his second amended complaint consisted of legal conclusions.  (*See generally*

3    *id.*)

4           On April 20, 2016, Defendants filed their second motion for a more definite

5    statement.  (2d Mot. for More Def. Stmt. (Dkt. # 28).)  Mr. Iceberg did not respond.  (*See*

6    *generally* Dkt.)  On June 16, 2016, the court granted Defendants' motion.  (6/16/16 Order

7    (Dkt. # 29).)  The court initially ordered Mr. Iceberg to file a third amended complaint no

8    later than July 1, 2016 (*id.* at 8), but then granted him an extension until August 14, 2016

9    (7/19/16 Order (Dkt. # 33) at 4-5).

10          Mr. Iceberg filed his third amended complaint on August 8, 2016, and it is now the

11   operative complaint in this proceeding.  (*See* TAC.)  In his third amended complaint, Mr.

12   Iceberg added Ms. Lashway as a defendant "in her official capacity as [the] current

13   Secretary of [DSHS]."  (*Id.* at 2.)  Although Mr. Iceberg alleged in his first and second

14   amended complaints that he was "a qualified individual under the meaning of the ADA

15   and Rehabilitation Act" or "within the meaning of the ADA, and [the Washington Law

16   Against Discrimination ("WLAD")]."[4]  (FAC at3; SAC at 3.)  Mr. Iceberg now alleges

17   simply that he is "disabled" and "a current recipient of Social Security Disability

18   Insurance."  (TAC at 3.)  He omits any specific description of his alleged disability.  (*Id.*)

19   Mr. Iceberg also alleges that he is "qualified to seek services from DVR" and continues

20   to seek such services, but Defendants refuse to respond to him.  (*Id.*)

21

22          [4] *See* WLAD, RCW ch. 49.60.

1    In his third amended complaint, Mr. Iceberg also expands the relevant time period

2    from October 2014, through July 2015, to October 2014, through August 2016.  (*Id.*)  He

3    further alleges that he made his request for an accommodation to both Ms. Wilson and

4    Ms. Martin but never received a response.  (*Id.*)  He also alleges that Defendants have

5    "refused to provide services from [DVR]" since July 2015.  (*Id.*)  Mr. Iceberg also asserts

6    new claims under WLAD for failure to accommodate and for retaliation.  (*Id.* at 6.)

7    Much of the remainder of Mr. Iceberg's third amended complaint, like his previous

8    complaint, consists of legal conclusions.  (*See generally id.*)  Finally, Mr. Iceberg

9    increases his damages demand from $300,000.00 to $1,000,000.00.  (*Id.* at 7; *see also*

10   SAC at 8; FAC at 7.)

11   On August 22, 2106, Defendants filed a motion to dismiss Mr. Iceberg's third

12   amended complaint, which was properly noted their motion for September 16, 2016.

13   (*See generally* MTD); Local Rules W.D. Wash. LCR 7(d)(3) (indicating that a party

14   should note a motion to dismiss on the fourth Friday after filing).  Mr. Iceberg's response

15   to Defendants' motion was due on September 12, 2016.  *See id.* (indicating that any

16   opposition papers to a motion to dismiss "shall be filed an served not later than the

17   Monday before the noting date).  Mr. Iceberg did not timely respond to Defendants'

18   motion to dismiss.  (*See generally* Dkt.)  Instead, Mr. Iceberg requested an extension of

19   time to file his response (MFE (Dkt. # 37)), and the court granted his request (11/1/16

20

21

22

1  Order (Dkt. # 48)).  Mr. Iceberg filed his response to Defendants' motion to dismiss on

2  November 9, 2016.[5]  (MTD Resp. (Dkt. # 50).)

3         On September 20, 2016, Mr. Iceberg filed a motion for leave to file a fourth

4  amended complaint "to respond to the alleged deficiencies described in Defendants'

5  [m]otion, as well as to make other needed amendments."[6]  (*See generally* MFL at 1.)  On

6  October 3, 2016, Defendants timely filed a response to Mr. Iceberg's motion for leave to

7  amend his third amended complaint.  (MFL Resp. (Dkt. # 47).)

8         Mr. Iceberg's proposed fourth amended complaint adds more legal conclusions,

9  but few new factual allegations.  (*See generally* Prop. 4th Am. Compl. )  In his proposed

10  fourth amended complaint, Mr. Iceberg eliminates Mr. Aguirre as a defendant and

11  amends his allegations to sue the remaining Defendants in their individual capacities, as

12  well their official capacities.  (*See id.* at 3.)  Except for these modifications and the

13  addition myriad legal conclusions, the factual allegations contained in Mr. Iceberg's

14  proposed fourth amended complaint remain largely unchanged.  (*See generally id.*)

15        Following Mr. Iceberg's motion to amend his third amended complaint,

16  Defendants also filed a motion for a protective order with respect to certain discovery

17

18
       _____

19        [5] Along with his responsive memorandum, Mr. Iceberg submitted a declaration.  (Iceberg
     Decl. (Dkt. # 51).)  With few exceptions, the court may not consider "any material beyond the

20   pleadings" when ruling on a Rule 12(b)(6) motion.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th
     Cir. 2001) (citation and quotation marks omitted).  Mr. Iceberg's declaration does not fall within

21   any exception to the general rule.  *See id.*  Accordingly, the court will not consider Mr. Iceberg's
     declaration when evaluating Defendants' motion to dismiss.

22        [6] The court's deadline for filing amended pleadings expired on September 21, 2016.
     (Sched. Ord. (Dkt. # 25) at 1.)

1   requests issued by Mr. Iceberg (*see generally* MPO) and a motion to extend certain case

2   schedule deadlines (*see generally* MFE).  The court now considers the parties' motions.

### III.    ANALYSIS

#### A. Standards for a Motion to Dismiss

5          When considering a motion to dismiss under Federal Rule of Civil Procedure

6   12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

7   party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

8   2005).  The court must accept all well-pleaded facts as true and draw all reasonable

9   inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135

10  F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain

11  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

12  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

13  550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th

14  Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that

15  allows the court to draw the reasonable inference that the defendant is liable for the

16  misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads fact that are

17  'merely consistent with' a defendant's liability, it 'stops short of the line between

18  possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at

19  557).  Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal

20  theory or the absence of sufficient facts alleged under a cognizable legal theory.

21  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

22

1    As noted above, Mr. Iceberg's complaints are rife with legal conclusions.  The

2    court need not accept as true a legal conclusion presented as a factual allegation.  *Iqbal*,

3    556 U.S. at 678.  Although the pleading standard of Federal Rule of Civil Procedure 8

4    does not require "detailed factual allegations," it demands more than "an unadorned, the-

5    defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*, 550 U.S. at 555).  A

6    pleading that offers only "labels and conclusions or a formulaic recitation of the elements

7    of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil

8    Procedure 12(b)(6).  *Id.*  A complaint does not survive dismissal where "it tenders

9    'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550

10   U.S. at 557).  In addition, "[a] plaintiff suing multiple defendants 'must allege the basis

11   of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2),

12   which requires a short and plain statement of the claim to put defendants on sufficient

13   notice of the allegations against them.'"  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d

14   1088, 1103 (E.D. Cal. 2014) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071

15   (N.D. Cal. 1988)).

16    Even though Mr. Iceberg's is a *pro se* litigant, his complaint is evaluated under the

17   *Iqbal/Twombly* pleading standards.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

18   2010).  However, the Ninth Circuit has clarified that complaints of individuals who are

19   proceeding *pro se*

20        must be held to less stringent standards than formal pleadings drafted by
          lawyers, as the Supreme Court has reaffirmed since *Twombly*.  *See*
21        *Erickson v. Pardus*, 551 U.S. 89, 94 . . . (2007)(per curiam).  *Iqbal*
          incorporated the *Twombly* pleading standard and *Twombly* did not alter

22

ORDER - 10

1
2

> courts' treatment of *pro se* filings; accordingly, we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*.

*Id.* at 341-42.  Nevertheless, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir.1982)); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

Further, the Ninth Circuit has recognized that a plaintiff does not enjoy unlimited opportunities to amend his or her complaint.  *See McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996) (affirming the district court's dismissal of the plaintiff's third amended complaint without leave to amend when it "restated the prior [complaints] without curing their deficiencies").  A court may deny leave to amend a complaint when further amendment would be futile.  *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).

**B.  Defendants' Motion to Dismiss**

On a motion to dismiss pursuant to Rule 12(b)(6), the court must limit its review to the operative complaint and may not consider facts presented in briefs or extrinsic evidence.  *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  Accordingly, when evaluating Defendants' motion to dismiss, the court limits its review to Mr. Iceberg's third amended complaint, which is the operative complaint in this proceeding.  (*See* TAC.)  The court only analyzes Mr. Iceberg's proposed fourth amended complaint for the purpose of evaluating whether the court should grant further leave to amend.  Mr. Iceberg

1  asserts state law claims under WLAD, the tort of intentional infliction of emotional

2  distress, and the Washington State Constitution.  (TAC at 6.)  He also asserts federal

3  claims under 42 U.S.C. § 1983, Title II of the ADA, and the Rehabilitation Act.  (*Id.*)

4  The court addresses Mr. Iceberg's federal claims first.

5      **1.  Mr. Iceberg's Claims under Title II of the ADA and Rehabilitation Act**

6      Mr. Iceberg asserts claims for retaliation, disparate impact, and failure to

7  accommodate under Title II of the ADA and the Rehabilitation Act.  (*See* TAC at 6.)

8          **a.  Retaliation**

9      The court first addresses Mr. Iceberg's retaliation claims under both federal

10  statutes.  The Ninth Circuit has held:

11  > By statute, the remedies for violations of the ADA and the Rehabilitation
    > Act are co-extensive with each other, 42 U.S.C. § 12133; 29 U.S.C. §
12  > 794a(a)(2), and are linked to Title VI of the Civil Rights Act of 1964, 42
    > U.S.C. § 2000d, *et seq.*  These statues require that ADA and Rehabilitation
13  > Act remedies be construed the same as remedies under Title VI.

14  *Ferguson v. City of Phoenix*, 157 F.3d 668, 673 (9th Cir. 1998).  The Rehabilitation Act

15  contains no anti-retaliation provision, but rather incorporates the ADA's anti-retaliation

16  provision , 42 U.S.C. § 12203.  Neither compensatory nor punitive damages are available

17  for retaliation under the ADA.  *Alvarado v. Cajun Operating Co.*, 588 F.3d 1262, 1268

18  (9th Cir. 2009).  "Combining the *Ferguson* holding that ADA and Rehabilitation Act

19  remedies are co-extensive, with *Alvarado*'s holding that compensatory damages are not

20  available for retaliation under the ADA, it appears that in this circuit compensatory

21  damages are not available for retaliation under the Rehabilitation [A]ct."  *McCoy v. Dep't*

22  *of Army*, 789 F. Supp. 2d 1221, 1234 (E.D. Cal. 2011), *reconsideration denied*, 2011 WL

1   6749806 (E.D. Cal. Dec. 22, 2011).  Although a plaintiff may, in appropriate

2   circumstances, seek prospective injunctive relief against state officials under

3   *Ex Parte Young*, 209 U.S. 123, 155-56 (1908),[7] Mr. Iceberg has not asserted a claim for

4   injunctive relief.[8]  (*See* TAC at 7.)  Instead, he seeks only compensatory damages of

5   $1,000,000.00.  (*See id.*)  As discussed above, such damages are not available with

6   respect to his claims for retaliation under either the ADA or the Rehabilitation Act.

7   Accordingly, the court grants Defendants' motion to dismiss Mr. Iceberg's claims for

8   retaliation under both the ADA and the Rehabilitation Act.

### b.  Disparate Impact and Failure to Accommodate

10       Next, the court addresses Mr. Iceberg's claims for both "[d]isparate [i]mpact" and

11  "[f]ailure to [a]ccommodate" under the ADA and the Rehabilitation Act.  (*See* TAC at 6.)

12  Both of these claims are types of disability discrimination claims that a plaintiff may

13  bring under the ADA and the Rehabilitation Act.  *See Badwal v. Bd. of Trustees of Univ.*

14  *of Cal.*, 139 F. Supp. 3d 295, 308 (D.D.C. 2015).  The language of the two statutes is

15  "similarly expansive" and "Congress has directed that the ADA and Rehabilitation Act be

16  construed consistently."  *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997); *Bay*

17      [7] *See also Bylsma v. Haw. Pub. Housing Auth.*, 951 F. Supp. 2d 1116, 1122 (D. Haw.
18  June 13, 2013) (citing *Alvarado*, 588 F.3d at 1270) ("[P]unitive and compensatory damages are
    not available for ADA retaliation claims. . . . Rather, only prospective equitable relief may be
    awarded.")

19      [8] Mr. Iceberg's request for "any and all relief the court may deem proper" (TAC at 7) is
20  insufficient to allege a demand for injunctive relief.  *See, e.g.*, *Parreno v. Berryessa Union Sch.*,
    NO. C 09-3422 RS, 2010 WL 532376, at *1 (N.D. Cal. Feb. 8, 2010) ("[Plaintiff's] claim for
21  injunctive relief is inadequately pleaded because it fails to specify the relief she seeks . . . .").
    His demand in his proposed fourth amended complaint for "[a]ny and all other remedies
    provided pursuant to 42 U.S.C. 1983, the ADA, the Rehabilitation Act, and the WLAD" (Prop.
22  4th Am. Compl. at 16) does not cure this deficiency.

ORDER - 13

*Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999) ("[The Ninth Circuit's] interpretation of Title II of the ADA applies equally to Section 504 of the Rehabilitation Act.").  Thus, "cases interpreting the ADA are equally applicable when analyzing a claim under the Rehabilitation Act." *Badwal*, 139 F. Supp. 3d at 308.

To assert a discrimination claim under either Title II of the ADA or Section 504 of the Rehabilitation Act, Mr. Iceberg must allege that he is an individual with a disability within the meaning of the statute.  *See id.* at 307-08; *see also Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (discussing elements of prima facie case of disability discrimination under the Rehabilitation Act and the ADA, including the element that plaintiff is disabled within the meaning of the statute); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1055 n. 1 (9th Cir. 2005) (noting that Title II of the ADA and Section 504 of the Rehabilitation Act "create the same rights and obligations"); *Weinreich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997) (listing elements for disability discrimination claims under Title II of the ADA and Section 504 of the Rehabilitation Act, including the element that plaintiff is disabled within the meaning of the statute); *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999) (applying a combined set of elements for plaintiff's disability discrimination claims under Title II of the ADA and Section 504 of the Rehabilitation Act).  A plaintiff has a "disability" within the meaning of the relevant statutes if he or she (1) suffers an impairment, (2) the impairment limits an activity that constitutes a major life activity, and (3) the limitation is substantial.  *Klamut v. Cal. Highway Patrol*, No. 15-cv-02132-MEJ, 2015 WL 9024479,

at *6 (N.D. Cal. Dec. 16, 2015) (providing definition of disabled under ADA); *Badwal*, 139 F. Supp. 3d at 308 (providing definition of disabled under both the ADA and the Rehabilitation Act).

Mr. Iceberg's allegations of disability in the operative third amended complaint include the following:  "Plaintiff is disabled.  He is a current recipient of Social Security Disability."  (TAC at 3.)  "[C]ourts have generally required the plaintiff to plead the [element of] disability with some factual specificity."  *Klamut*, 2015 WL 9024479, at *7 (rejecting the adequacy of the plaintiff's allegations that he suffered "a psychotic episode secondary to sleep deprivation over a two-week period" and that he "suffered from a mental illness.").  For example, in *O'Guinn v. Lovelock Correctional Center.*, 502 F.3d 1056, 1058 (9th Cir. 2007), the Ninth Circuit held that the plaintiff had adequately alleged that he was disabled where he pleaded that he suffered from mental illness including "brain damage, and organic personality disorder."  Another court held that the plaintiff's allegation that he suffered from multiple sclerosis "[c]learly . . . qualifies as a physical impairment for purposes of the ADA" and satisfies the disability inquiry in an ADA claim.  *Puckett v. Park Place Entm't Corp.*, 332 F. Supp. 2d 1349, 1353 (D. Nev. 2004).

District courts, however, have dismissed claims that are based on allegations that merely label the plaintiff as disabled within the meaning of the statute.  *See Klamut*, 2015 WL 9024479, at *6 (citing *Longariello v. Gompers Rehab. Ctr.*, No. CV–09–1607–PHX–GMS, 2010 WL 94113, at *3 (D. Ariz. Jan. 5, 2010) ("Merely labeling himself as 'disabled' in the Complaint is insufficient to explain what physical or mental disability

1    [the plaintiff] has."); *Kaur v. City of Lodi*, No. 2:14–cv–828–GEB–AC, 2014 WL

2    3889976, at *4-5 (E.D. Cal. Aug. 7, 2014) (finding that "conclusory allegations are

3    insufficient under the applicable pleading standard to allege facts from which a

4    reasonable inference may be drawn that [the plaintiff] suffered from a disability defined

5    in the ADA."); *Lambdin v. Marriott Resorts Hosp. Corp.*, No. 14–00345 SOM/KSC,

6    2015 WL 263569, at *2 (D. Haw. Jan. 21, 2015) ("It is not enough for [the plaintiff] to

7    state, in conclusory fashion, that he has a disability.  Having been injured or living with

8    an impairment does not necessarily guarantee that one is protected by the ADA.")); *see*

9    *also Sanders v. Arenson Prods., Inc*., 91 F.3d 1351, 1354 n.2 (9th Cir. 1996) ("We note

10   that 'disability' is susceptible to a broad variety of definitions and usages. . . . The ADA

11   defines 'disability' with specificity as a term of art.  Hence, a person may be 'disabled' in

12   the ordinary usage sense, or even for purposes of receiving disability benefits from the

13   government, yet still not be 'disabled' under the ADA.")).

14         Based on the foregoing authorities, the count concludes that Mr. Iceberg's

15   allegations of disability are inadequate.  Mr. Iceberg offers no specific factual allegations

16   to support his claim that he is disabled under either the ADA or the Rehabilitation Act,

17   such as the type or nature of the mental illness or physical impairment from which he

18   suffers.  Mr. Iceberg's  allegations of disability are nothing more than a "formulaic

19   recitation" of this element of his claims, and his allegation that he "is disabled,"

20

21

22

therefore, does not satisfy his pleading obligations.[9]  *See Twombly*, 550 U.S. at 555;

(TAC at 3.)

Further, Mr. Iceberg's assertion that he recieves Social Security Disability is also

inadequate to allege a disability under either the ADA or the Rehabilitation Act.

*Pimentel v. Cty. of Fresno*, No. 1:10-CV-01736-OWW-DLB, 2011 WL 4591175, at *6

(E.D. Cal. Sept. 30, 2011) (citing *Sanders*, 91 F.3d at 1354 n.2) ("The allegation that

Plaintiff was found to be disabled by the Social Security Administration in 2003 for

"mental conditions" does not establish a disability as defined by the ADA."); *Darcy v.

Lippman*, No. 03 CV6898 KMW DCF, 2008 WL 629999, at *14 (S.D.N.Y. Mar. 10,

2008) ("Plaintiff's arguments that he should be considered an 'individual with a

disability' because he has qualified for disability benefits from the Social Security

Administration, or because he is considered a disabled driver by the State of New

Jersey . . . , are insufficient, as he must adequately plead that he meets the definition of a

disabled individual that is specifically set out in the Rehabilitation Act."); *see also Weiler

v. Household Fin. Corp.*, 101 F.3d 519, 523-524 (7th Cir. 1996) ("Because the ADA's

determination of disability and a determination under the Social Security disability

system diverge significantly in their respective legal standards and statutory intent,

determinations made by the Social Security Administration concerning disability are not

dispositive findings for claims arising under the ADA."); *Robinson v. Neodata Servs.*, 94

---

[9] In his proposed fourth amended complaint, Mr. Iceberg alleges that he "is a 'qualified individual with a disability' as defined in 42 U.S.C. § 12131(2)."  (Prop. 4th Am. Compl. at 6.) This proposed amendment to his "disability" allegation is also "formulaic" and constitutes nothing more than a legal conclusion. *See Iqbal*, 556 U.S. at 678.  As such, it does not cure the deficiency in Mr. Iceberg's third amended complaint.

1    F.3d 499, 502 n.2 (8th Cir. 1996) ("Social Security determinations, however, are not

2    synonymous with a determination of whether a plaintiff is a 'qualified person' for

3    purposes of the ADA."); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802-05

4    (1999) (noting that the ADA's definition of "disability" differs from that of the Social

5    Security Administration's).

6           Based on the foregoing authorities, the court concludes that Mr. Iceberg's

7    allegations that he "is disabled" and a "recipient of Social Security Disability" do not

8    contain "sufficient factual matter" to permit an evaluation of the plausibility of his claims

9    under the ADA or the Rehabilitation Act. *See Iqbal*, 556 U.S. at 678.  Accordingly, the

10   court grants Defendants' motion to dismiss Mr. Iceberg's claims under these statutes for

11   disability discrimination, including his claims based on disparate impact and failure to

12   accommodate.

13          **2.  Mr. Iceberg's Claims under 42 U.S.C. § 1983**

14          Mr. Iceberg asserts two claims under 42 U.S.C. § 1983:  disability discrimination

15   and religious discrimination.  (*See* TAC at 6.)

16          **a.   Disability Discrimination**

17          The court will address Mr. Iceberg's claim for disability discrimination under 42

18   U.S.C. § 1983 first.  A Section 1983 claim cannot be used to enforce rights under the

19   ADA or the Rehabilitation Act, both of which contain statutory schemes that already

20   include comprehensive remedial measures.  *See Vinson v. Thom*as, 288 F.3d 1145,

21   1155-1156 (9th Cir. 2002).  Although *Vinson* involved a Section 1983 claim based on the

22   ADA brought against a state official in her individual capacity, the court concludes that

the Ninth Circuit's reasoning extends to (1) Section 1983 suits brought against officials in their official capacities and (2) Section 1983 claims based on the Rehabilitation Act.  In particular, the court notes that the *Vinson* court specifically relied on *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997) in reaching its decision.  *See Vinson*, 288 F.3d at 1156.  In *Holbrook*, the Eleventh Circuit held that a plaintiff suing a city could not "maintain a [Section] 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the [plaintiff's] rights created by the Rehabilitation Act and the ADA." *Id.* (quoting *Holbrook*, 112 F.3d at 1531); *see also Cherry v. City Coll. of S.F.*, No. C 04-04981 WHA, 2006 WL 6602454, at *12 (N.D. Cal. Jan. 12, 2006) (extending the holding in *Vinson* and holding "that the official/individual capacity distinction does not alter the preclusive effect of Title II [of the ADA]"); *Hill v. Baca*, No. CV 08-03834 CAS (AJW), 2010 WL 1727655, at *6 (C.D. Cal. Apr. 26, 2010) ("Section 1983 is not a vehicle to vindicate statutory rights secured by the ADA; rather, plaintiff may sue under the ADA directly."); *see also Save Our Summers v. Wash. State Dep't of Ecology*, 132 F. Supp. 2d 896, 910 (E.D. Wash. 1999) ("[Section] 1983 cannot be used to enforce rights created by a statutory scheme that already include comprehensive remedial measures.").  Accordingly, the court grants Defendants' motion to dismiss Mr. Iceberg's Section 1983 disability discrimination claim with prejudice against all Defendants in both their individual and official capacities.

### b.  Religious Discrimination

Next, the court addresses Mr. Iceberg's claim for religious discrimination under 42 U.S.C. § 1983.  (*See* TAC at 6.)  First, the court agrees with Defendants that all Section

1   1983 claims against Defendants in their "official capacities" are barred by the Eleventh

2   Amendment's grant of sovereign immunity.  *See Kentucky v. Graham*, 473 U.S. 159, 169

3   (1985); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither

4   a State nor its officials acting in their official capacities are 'persons' under § 1983.");

5   *Pittman v. Or. Empl. Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007) (explaining that "the

6   cause of action in § 1983 does not reach arms of the state.").  Washington has not waived

7   its sovereign immunity with respect to Section 1983 claims.  *Rains v. State*, 674 P.2d 165,

8   170 (Wash. 1983) (reaffirming that "the State is not suable under section 1983 for acts of

9   its agents subjecting the plaintiff to deprivation of his civil rights."); *Safouane v. Fleck*,

10  226 F. App'x 753, 760 (9th Cir. 2007) (citing *Rains* for this same proposition).

11  Accordingly, the court grants Defendants' motion to dismiss Mr. Iceberg's Section 1983

12  claims against Defendants in their official capacities.

13         In addition, to the extent that Mr. Iceberg's complaint could be construed to sue

14  Mr. Quigley,[10] Ms. Lashway, and Mr. Aguirre in their personal capacities, the court also

15  grants Defendants' motion to dismiss these claims.  Mr. Iceberg has sued these

16  individuals in their supervisory capacities only, as the current and former Secretaries of

17  DSHS and the current Director of DVR.  (*See generally* TAC.)  Mr. Iceberg makes no

18  factual allegations of direct involvement by Mr. Quigley, Ms. Lashway, or Mr. Aguirre

19  beyond their duties as heads of the departments at issue.  (*See generally* TAC.)  As such,

20  

21         [10] Mr. Quigley is the former Secretary of DSHS.  Under Federal Rule of Civil Procedure 25(d), when a public officer who has been sued in his or her official capacity leaves office, "[t]he

22  officer's successor is automatically substituted as a party."  Fed. R. Civ. P. 25(d).  Ms. Lashway should therefore be substituted for Mr. Quigley in any event.

1  any liability on the part of these defendants would necessarily derive from the doctrine of

2  respondeat superior.  Such claims are not cognizable under Section 1983.  *Iqbal*, 556 U.S.

3  at 676 ("Government officials may not be held liable for the unconstitutional conduct of

4  their subordinates under a theory of respondeat superior liability."); *OSU Student All. v.*

5  *Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("The Attorney General's senior position does

6  not by itself make him liable for . . . religious discrimination perpetrated by subordinates;

7  rather, he must have engaged in culpable action or inaction himself.").  Accordingly, the

8  court grants Defendants' motion to dismiss Mr. Iceberg's Section 1983 claims against

9  Mr. Quigley, Ms. Lashway, and Mr. Aguirre in either their personal or official capacities.

10  Finally, the court also grants Defendants' motion to dismiss Mr. Iceberg's claim

11  under Section 1983 for religious discrimination against Ms. Martin and Ms. Wilson in

12  their personal capacities.  Mr. Iceberg's allegations concerning his claim for religious

13  discrimination include that (1) he is a Christian Scientist, (2) his sincerely held religious

14  beliefs in Christian Science are incompatible with psychology and psychiatry, (3)

15  between October 2014, and July 2015, he repeatedly asked Ms. Wilson if he could

16  receive services from DVR without being required to meet with a psychologist, (4)

17  Defendants failed to respond to his request, and (5) Ms. Wilson stated that Christian

18  Science was not really Mr. Iceberg's religion.  (*See* TAC at 5.)  Although Mr. Iceberg

19  makes specific reference to Ms. Wilson, he makes no specific factual allegations against

20  Ms. Martin concerning any violation of his religious rights.  (*See generally* TAC.)  for

21  this reason, the court concludes that Mr. Iceberg has failed to allege "sufficient factual

22  matter, accepted as true, to 'state a claim to relief that is plausible on its face'" with

1    respect to his claim for religious discrimination against Ms. Martin.  *See Iqbal*, 556 U.S.

2    at 678 (quoting *Twombly*, 550 U.S. at 570).  On this basis, the court grants Defendants'

3    motion to dismiss this claim against Ms. Martin.

4         Further, none of Mr. Iceberg's allegations concerning religious discrimination

5    address whether the alleged discrimination was intentional.  *See Furnace v. Sullivan*, 705

6    F.3d 1021, 1030 (9th Cir. 2013) ("To state a claim under 42 U.S.C. § 1983 for a violation

7    of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that

8    the defendants acted with an intent or purpose to discriminate against the plaintiff based

9    upon membership in a protected class.") (citation and internal quotation marks omitted);

10   *see also Barren v. Harrington*, 152 F.3d 1193, 1195 (9th Cir. 1998) (to state claim under

11   Section 1983, intent or purpose to discriminate based upon membership in protected class

12   must be shown); *see also Lewis v. Mitchell*, 416 F. Supp. 2d 935, 944 (S.D. Cal. 2005)

13   ("Plaintiff must assert more than negligence to state a valid § 1983 claim for the violation

14   of his Free Exercise rights.  Instead, Plaintiff must allege conscious or intentional acts

15   that burden his free exercise of religion."); *Shaheed v. Winston*, 885 F. Supp. 861, 868

16   (E.D. Va. 1995), *aff'd*, 161 F.3d 3 (4th Cir. 1998) (holding that negligence did not give

17   rise to a Free Exercise § 1983 claim).  Because Mr. Iceberg has failed to allege whether

18   Ms. Wilson, Ms. Martin, or any other Defendant intended to discriminate against him

19   based on his religious beliefs, his allegations are insufficient to state such a claim under

20   Section 1983.  The court, therefore, grants Defendants' motion to dismiss this claim on

21   this basis as well.

22   //

ORDER - 22

1  **C.  Leave to Amend**

2      Prior to filing his response to Defendants' motion to dismiss, Mr. Iceberg filed a

3  motion for leave to amend his third amended complaint (*see generally* MFL), to which he

4  attached his proposed fourth amended complaint (*see* Prop. 4th Am. Compl.).  Even if

5  Mr. Iceberg had not filed his motion, the court would consider whether granting leave to

6  amend his third amended complaint is appropriate in these circumstances.  The court

7  "should freely give leave [to amend] when justice so requires, Fed. R. Civ. P. 15(a)(2),

8  and should ordinarily grant a *pro se* plaintiff leave to amend unless "it is absolutely clear"

9  that the deficiencies in the complaint cannot be cured.  *Rosati v. Igbinoso*, 791 F.3d 1037,

10  1039 (9th Cir. 2015).  However, as noted above, a plaintiff does not enjoy unlimited

11  opportunities to properly state a claim.  *See McHenry*, 84 F.3d at 1174 (affirming the

12  district court's dismissal of the plaintiff's third amended complaint without leave to

13  amend when it "restated the prior [complaints] without curing their deficiencies").  When

14  a party repeatedly fails to cure deficiencies, the court may order dismissal without leave

15  to amend.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming

16  dismissal with prejudice where district court had instructed *pro se* plaintiff regarding

17  deficiencies in prior order dismissing claim with leave to amend).  Further, "[t]he district

18  court's discretion to deny leave to amend is particularly broad where plaintiff has

19  previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149,

20  1160 (9th Cir. 1989).

21      The court has given Mr. Iceberg several opportunities to amend his complaint.

22  (*See* Compl.; FAC; SAC; TAC.)  Indeed, his proposed fourth amended complaint would

1    represent the fifth iteration of his claims in this litigation.  (*See* Prop. 4th Am. Compl.)  In

2    addition, the court has been indulgent in granting Mr. Iceberg's requests for extended

3    time to formulate his claims (*see* 7/19/16 Order) and to respond to Defendants' motions

4    (*see* 11/1/16 Order).  The court is sympathetic to Mr. Iceberg's personal circumstances

5    (*see id.* at 3-4), but he has not been able to properly allege his federal claims in this

6    litigation, and his proposed fourth amended complaint does not resolve the issues raised

7    by Defendants' motion to dismiss or this order.  Accordingly, the court denies Mr.

8    Iceberg's motion for leave to amend to file a fourth amended complaint, and dismisses

9    Mr. Iceberg's federal claims without leave to amend them.  *See Leadsinger, Inc. v. BMG*

10   *Music*, 512 F.3d 522, 532 (9th Cir. 2008) (denying leave to amend because of "repeated

11   failure to cure deficiencies").

12   ### D.  State Law Claims and Supplemental Jurisdiction

13           Defendants also ask the court to decline supplemental jurisdiction over Mr.

14   Iceberg's state law claims.  (MTD at 12-13.)  The supplemental jurisdiction statute

15   provides that where the district court has original jurisdiction over a civil action, the

16   district court "shall have supplemental jurisdiction over all other claims that are so related

17   to claims in the action within such original jurisdiction that they form part of the same

18   case or controversy under Article III of the United States Constitution."  28 U.S.C.

19   § 1367(a).  A district court may, however, decline to exercise supplemental jurisdiction

20   over a claim if the district court has dismissed all claims over which it has original

21   jurisdiction.  28 U.S.C. § 1367(c)(3).  Here, the court has dismissed all of Mr. Iceberg's

22

1    federal claims, *see supra* § III.B., which provided the basis for the court's exercise of

2    subject matter jurisdiction in this matter, *see* 28 U.S.C. § 1331.

3         "The decision whether to continue to exercise supplemental jurisdiction over state

4    law claims after all federal claims have been dismissed lies within the district court's

5    discretion." *Foster v. Wilson,* 504 F.3d 1046, 1051 (9th Cir. 2007). "[I]n the usual case

6    in which all federal-law claims are eliminated before trial, the balance of factors . . . will

7    point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri*

8    *v. Varian Assoc., Inc.,* 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting

9    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

10        Although this litigation has been pending since early August 2015, it is still in its

11   earliest stages. Indeed, due in large part to the number of amended complaints Mr.

12   Iceberg has filed, the litigation has not proceeded past the pleading stage. Thus, the court

13   has not invested substantial judicial resources in the resolution of this dispute. Further,

14   the parties have engaged in limited, if any, discovery concerning Plaintiffs' state law

15   claims. (*See generally* MPO.) With the court's dismissal of Mr. Iceberg's federal claims,

16   this matter consists solely of state law issues and claims. Thus, economy of resources

17   and comity favor declining the exercise of supplemental jurisdiction. Finally, Mr.

18   Iceberg identified no undue inconvenience or prejudice that he will suffer if the court

19   declines supplemental jurisdiction and he must pursue his state law claims in the local

20   state court. (*See* MTD Resp. at 9.) Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the

21   court declines to exercise supplemental jurisdiction over Mr. Iceberg's state law claims.

22   The court, therefore, dismisses those claims without prejudice.

1    **E.  Remaining Motions**

2        Because the court has dismissed Mr. Iceberg's federal claims without leave to

3    amend and has declined to exercise supplemental jurisdiction over his remaining state

4    law claims, Defendants' motions for a protective order and to extend certain case

5    schedule deadlines are both moot.  (*See* MPO; MFE.)  Accordingly, the court denies

6    them.

7                          **IV.    CONCLUSION**

8        Based on the foregoing analysis, the court GRANTS Defendants' motion to

9    dismiss (Dkt. # 36) and DISMISSES all of Mr. Iceberg's federal claims, including his

10   claims under Title II of the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983.  The

11   court also DENIES Mr. Iceberg's motion for leave to file a fourth amended complaint

12   (Dkt. # 42), DENIES him leave to amend his federal claims, and DISMISSES those

13   claims WITH PREJUDICE.  The court further declines to exercise supplemental

14   jurisdiction over Mr. Iceberg's remaining state law claims and DISMISSES those claims

15   WITHOUT PREJUDICE.  Finally, the court DENIES Defendants' remaining motions for

16   a protective order and to extend certain case schedule deadlines (Dkt. ## 43, 54) as moot.

17       Dated this 27th day of January, 2017.

18

19

20   JAMES L. ROBART
     United States District Judge

21

22